# IN THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:                                                          **CHAPTER 13**
OSCAR CLEMONS, JR.                              **CASE NO. 1103184EE**

**ADVANCED RECOVERY SYSTEMS, INC.**

**VS.**                                              **ADVERSARY NO. 1100127EE**

**OSCAR CLEMONS, JR.**


Hon. Stephen E. Gardner                    Attorney for Advanced Recovery Systems, Inc.
YoungWells
2000 Regions Plaza
Post Office Box 23059
Jackson, MS 39225-3059

Hon. Tylvester Goss                                              Attorney for Debtor
Goss & Williams
1441 Lakeover Road
Jackson, MS 39213


Edward Ellington, Judge


## MEMORANDUM OPINION
## ON THE *COMPLAINT OBJECTING*
## *TO DISCHARGEABILITY OF DEBT*

**THIS MATTER** came before the Court on July 26, 2012, for trial on the *Complaint Objecting to Dischargeability of Debt* (#1) filed by Advanced Recovery Systems, Inc., and the *Response to Complaint Objecting to Dischargeability of Debt* (#8) filed by Oscar Clemons, Jr.

After considering the pleadings, the exhibits and testimony from the trial and the briefs filed

by the parties after the trial, the Court finds that *Complaint Objecting to Dischargeability of Debt* (#1) filed by Advanced Recovery Systems, Inc. is not well taken and a judgment declaring the debt discharged should be granted in favor of Oscar Clemons, Jr.

## FINDINGS OF FACT

The pertinent facts are not in dispute. During the month of May in 2009, Oscar Clemons, Jr. (Debtor) received medical treatment at St. Dominic Hospital (St. Dominic). The total cost of the Debtor's treatment provided by St. Dominic was approximately $139,807.12. According to the testimony at trial, one of the Debtor's insurance carriers mistakenly paid St. Dominic two separate payments of $74,297.73. Due to a clerical and/or bookkeeping error on behalf of St. Dominic, one of the $74,297.73 payments was entered as a payment made by the Debtor instead of a payment made by the insurance carrier.

At some point, the Debtor's account at St. Dominic was closed; however, the account showed that the Debtor had a credit balance of $74,297.73. Since St. Dominic's records showed that the Debtor himself had made a $74,297.73 payment, St. Dominic issued a check (dated December 11, 2009) payable to the Debtor in the amount of $74,297.73. On December 14, 2009, the check was deposited it into the Debtor's personal bank account. The parties do not dispute that the Debtor spent the $74,297.73.

Approximately three months later, in March of 2010, St. Dominic discovered the bookkeeping error of a $74,297.73 payment being credited to the Debtor, and then, the subsequent "refunding" of $74,297.73 to the Debtor. St. Dominic then attempted to recover the $74,297.73 from the Debtor, but was unsuccessful. At some point thereafter, St. Dominic assigned the collection of the $74,297.73 to Advanced Recovery Systems, Inc. (ARS), the plaintiff in the above-styled

2

adversary proceeding.

Ultimately, ARS filed suit against the Debtor in the First Judicial District of the County Court of Hinds County, Mississippi (Cause No. 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-COV). ARS filed a motion for summary judgment. On or around July 25, 2011, ARS's motion for summary judgment was granted and ARS was awarded a final judgment against the Debtor in the amount of $74,297.73 (Mississippi Judgment).

On September 12, 2011, the Debtor filed a petition for relief under Chapter 13 of the United States Bankruptcy Code. On October 12, 2011, ARS filed the above-styled adversary proceeding. In its *Complaint Objecting to Dischargeability of Debt* (#1) (Complaint), ARS objects to the discharge of the Mississippi Judgment on two grounds: (1) that the "Debtor has committed larceny under 11 U.S.C. Section 523(a)(4)"[1] and (2) that the "Debtor has received money by false pretenses, false representation or actual fraud. . .[under] 11 U.S.C. Section 523(a)(2)."[2] In his *Response to Complaint Objecting to Dischargeability of Debt* (#8) (Response), the Debtor denies that ARS is entitled to the relief requested under 11 U.S.C. § 523(a)(4)[3] or § 523(a)(2).[4]

After the various deadlines in the *Scheduling Order* (#9) had passed, the Court set the matter

---

[1]*Complaint Objecting to Dischargeability of Debt*, Adversary No. 11-00127EE, Docket No. #1, ¶ 6, October 12, 2011.

[2]*Id.* at ¶ 7.

[3]Hereinafter, all code sections refer to the Bankruptcy Code found at Title 11 of the United States Code unless specifically noted otherwise.

[4]In its Complaint, ARS does not specify in its prayer which subsection under § 523(a)(2) it is proceeding under. However paragraph two of the Complaint does state § 523(a)(2)(A). Also, at the trial, ARS's attorney states subsection (A) of § 523(a)(2) as the basis for the nondischargeability of the Mississippi Judgment. Therefore, the Court will proceed under § 523(a)(2)(A).

for a Pre-Trial Conference. After two more Pre-Trial Conferences,[5] the Court set the matter for trial. The trial on the Complaint and Response was held on July 26, 2012. After the record was closed, the parties subsequently entered into an *Agreed Order Scheduling Briefs* (#26) on July 31, 2012. The final brief was filed on August 31, 2012, and at that point, the Court took the matter under advisement.

## CONCLUSIONS OF LAW

### I.

This Court has jurisdiction of the subject matter and of the parties to this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(I).

### II.

Before considering the substantive issues involved in this adversary, the Court must first address a procedural matter. In its Complaint, ARS alleges that its debt is nondischargeable under § 523(a)(2) and § 523(a)(4). In its post-trial briefs, however, ARS bases its nondischargeability claim solely on § 523(a)(6). On unnumbered page 3 of ARS's *Plaintiff's Post-Trial Brief* (Post-Trial Brief) in footnote number 1 (FN 1), ARS explains its change in theory as follows:

> Paragraph 5 of ARS's Complaint herein provides that "[t]he claim by ARS against the debtor is based upon the debtor's <u>conversion of funds that were not his that he put to his own personal use.</u>" (emphasis added) The Complaint does not expressly refer to subsection (a)(6) of section 523, but the allegation of conversion and the testimony at trial plainly brings the case within subsection (a)(6). During the trial the attorneys discussed the question of larceny and the applicability of subsection (a)(4) of section 523, but as the proof developed it has become apparent that the relevant issue is conversion rather than larceny. To the extent necessary, if at all, ARS moves the Court to amend the Complaint to conform to the proof and clarify that subsection

---

[5]The Pre-Trial Conferences were held on March 7, 2012, May 14, 2012 and June 11, 2012.

4

(a)(6) is a basis for non-dischargeability of the state-court Judgment. The debtor will suffer no prejudice as the proof regarding dischargeability would be the same whether or not subsection (a)(6) was expressly identified in the Complaint as the vehicle for the conversion argument.

*Plaintiff's Post-Trial Brief,* Adversary No. 11-00127EE, Docket No. #31, n 1, August 13, 2012.

In neither its Post-Trial Brief nor its *Plaintiff's Post-Trial Reply Brief,*[6] ARS does not cite any authority to support its late request to amend its Complaint to include a nondischargeability claim under § 523(a)(6). On the other hand, the Debtor, in his post-trial brief, cites Federal Rule of Civil Procedure 15 in support of his contention that ARS cannot amend its Complaint after trial.

### A. Fed. R. Civ. P. 15

Federal Rule of Civil Procedure 15 (Rule 15) is made applicable to bankruptcy cases by Rule 7007 of the Federal Rules of Bankruptcy Procedure. Rule 15 provides the proper procedure to amend and supplement pleadings prior to trial, during the trial, and after the trial. Since ARS's request to amend came after the trial, Rule 15(b) controls. Rule 15(b) provides:

**Rule 15. Amended and Supplemental Pleadings.**

. . . .

**(b) Amendments During and After Trial.**

**(1) Based on an Objection at Trial.** If, at trial, a party objects that evidence is not within the issues raised in the pleadings, the court may permit the pleadings to be amended. The court should freely permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits. The court may grant a continuance to enable the objecting party to meet the evidence.

**(2) For Issues Tried by Consent.** When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised

---

[6]*Plaintiff's Post-Trial Reply Brief,* Adversary No. 11-00127EE, Docket No. #33, August 31, 2012.

> in the pleadings. A party may move--at any time, even after judgment--to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue.

Fed. R. Civ. P. 15(b).

### 1. Rule 15(b)(1)

The parties did not request a written transcript of the July 26, 2012, trial–only a copy of the audio recording is available. The Court has listened to the audio recording of the July 26, 2012, trial in order to determine whether Rule 15(b) applies. The Court finds that subsection (b)(1) of Rule 15, regarding amendments during trial, is inapplicable because at no point during the trial did either party raise an objection "that the evidence [was] not within the issues raised in the pleadings," namely § 523(a)(4) or § 523(a)(2).

### 2. Rule 15(b)(2)

Rule 15(b)(2) allows for amendments after trial. However, Rule 15(b)(2) applies in situations where an issued that was not raised in the pleadings is tried by either express or implied consent of the parties. The Court finds that since § 523(a)(6) was not tried by the parties express or implied consent, Rule 15(b)(2) also does not apply to allow ARS to amend its Complaint after the trial.

With respect to the issue of express consent, the Court notes that in his opening argument, the attorney for ARS, Stephen E. Gardner, states: "We filed a state court suit claiming that they had basically converted the money for their own use and had unjustly enriched themselves with the hospital's money."[7]  Other than in ARS's opening statement, the word *conversion* was not used during the trial. The only words used by ARS's attorney and the Debtor's attorney in connection with the Debtor's actions in receiving, cashing, and then spending the $74,297.73 were *larceny, theft,*

---

[7]Recording of Trial, July 26, 2012, at 10:41:15 to 10:41:31.

6

*fraud* and *stealing*. These are terms which are used when discussing the dischargeability of claims under §§ 523(a)(2)(A) and (a)(4), and not § 523(a)(6). Therefore, the Court finds that the issue of conversion under § 523(a)(6) was not tried by the parties' express consent.

The Court now turns to the issue of implied consent under Rule 15(b)(2). The Court finds that the record does not support a finding that the Debtor impliedly consented to the litigation of § 523(a)(6). The Court of Appeals for the Fifth Circuit has held that "trial of unpled issues by implied consent is not lightly to be inferred under Rule 15(b), [and] such inferences are to be viewed on a case-by-case basis and in light of the notice demands of procedural due process." *Triad Elec. & Controls, Inc. v. Power Sys. Eng'g, Inc.*, 117 F.3d 180, 193-94 (5th Cir. 1997).

In *United States v. Shanbaum*, the Fifth Circuit discussed implied consent and what a court should consider when determining whether an issue was tried by implied consent:

> Whether an issue has been tried with the implied consent of the parties depends upon whether the parties recognized that the unpleaded issue entered the case at trial, whether the evidence that supports the unpleaded issue was introduced at trial without objection, and whether a finding of trial by consent prejudiced the opposing party's opportunity to respond. *Haught v. Maceluch*, 681 F.2d 291, 305-306 (5th Cir.1982); *Jimenez v. The Tuna Vessel "Granada"*, 652 F.2d 415, 421 (5th Cir.1981). Whether the parties recognized that the unpleaded issue entered the case at trial often depends on whether the evidence that supports the unpleaded issue is also relevant to another issue in the case. If the evidence that supports the unpleaded issue is also relevant to another issue in the case, the introduction of this evidence "'may not be used to show consent to trial of a new issue absent a clear indication that the party who introduced the evidence was attempting to raise a new issue.'" *Haught,* 681 F.2d at 305 (quoting *International Harvester Credit Corp. v. East Coast Truck,* 547 F.2d 888, 890 (5th Cir.1977)). As Professors Wright, Miller, and Kane have observed, the reasoning behind this rule is sound, for "if evidence is introduced to support basic issues that have already been pleaded, the opposing party may not be conscious of its relevance to issues not raised by the pleadings unless that fact is made clear." 6A Charles A. Wright et al., Federal Practice and Procedure: Civil 2d § 1493, at 32-35 (1990).

*United States v. Shanbaum*, 10 F.3d 305, 312-13 (5th Cir. 1994).

As noted above, ARS objected to the discharge of the $74,297.73 in its Complaint under § 523(a)(2)(A) and § 523(a)(4). The Court will briefly examine §§ 523(a)(2)(A), (a)(4) and (a)(6) to determine whether § 523(a)(6) was tried by the parties' implied consent.

### 3.  § 523(a)(2)(A)

Section 523(a)(2)(A) excepts from discharge "any debt. . .for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;" 11 U.S.C. § 523(a)(2)(A). As a general matter, § 523(a)(2)(A)

> "contemplates frauds involving 'moral turpitude or intentional wrong; fraud implied in law which may exist without imputation of bad faith or immorality, is insufficient.' " *Allison v. Roberts (In re Allison),* 960 F.2d 481, 483 (5th Cir.1992) (footnote omitted) (quoting 3 *Collier on Bankruptcy* ¶ 523.08[4], at 523–50 (Lawrence P. King et al. eds., 15th ed. 1989)); *see also First Nat'l Bank v. Martin (In re Martin),* 963 F.2d 809, 813 (5th Cir.1992) ("Debts falling within section 523(a)(2)(A) are debts obtained by frauds involving moral turpitude or intentional wrong, and any misrepresentations must be knowingly and fraudulently made.").

*RecoverEdge L.P. v. Pentecost,* 44 F.3d 1284, 1292 (5th Cir. 1995).

### 4.  § 523(a)(4)

Section 523(a)(4) is the second ground ARS alleges for the denial of discharge of the $74,297.73 debt. Section 523(a)(4) excludes from a debtor's discharge a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). The Fifth Circuit has stated that § 523(a)(4) "was intended to reach those debts incurred through abuses of fiduciary positions and through active misconduct whereby a debtor has deprived others of their property by criminal acts; both classes of conduct involve debts arising from the debtor's acquisition or use of property that is not the debtor's." *Boyle v. Abilene Lumber (In re Boyle),* 819

F.2d 583, 588 (5th Cir.1987).  "To meet the definition of 'embezzlement,' there must be proof of the debtor's fraudulent intent in taking the property."[8]  "A creditor proves embezzlement by showing that he entrusted his property to the debtor, the debtor appropriated the property for a use other than that for which it was entrusted, and the circumstances indicate fraud."  *Brady v. McAllister (In re Brady),* 101 F.3d 1165, 1173 (6th Cir. 1996).  Larceny is defined as the "fraudulent and wrongful taking and carrying away of the property of another with intent to convert the property to the taker's use without the consent of the owner.  As distinguished from embezzlement, the original taking of the property must be unlawful."  4 *Collier on Bankruptcy* ¶ 523.10[2] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (footnote omitted).

### 5.  § 523(a)(6)

Under § 523(a)(6), a debt is excluded from discharge if the debt resulted from the "willful and malicious injury by the debtor to another entity or to the property of another entity."[9]  The Fifth Circuit has held that § 523(a)(6) encompasses the conversion of property by the debtor.  *Friendly Finance Service Mid-City, Inc. v. Modicue (In re Modicue),* 926 F.2d 452, 453 (5th Cir. 1991).  In the Fifth Circuit, an injury is both *willful and malicious* under § 523(a)(6) "where there is either an objective substantial certainty of harm or a subjective motive to cause harm." *In re Miller*, 156 F.3d at 606.

### 6.  Was § 523(a)(6) tried through the parties' implied consent?

Although subject to the limitation that the injury be *willful and malicious,* § 523(a)(6) may

---

[8]*Miller v. J.D. Abrams Inc. (In re Miller),* 156 F.3d 598, 602-03 (5th Cir. 1998), *cert. denied,* 526 U.S. 1016, 119 S. Ct. 1249, 143 L. Ed. 2d 347 (1999).

[9]11 U.S.C. § 523(a)(6).

encompass a wide range of conduct which causes harm to property or to others.  As explained in *Collier on Bankruptcy*:

> Conduct which may give rise to a nondischargeable debt under section 523(a)(6) may also be nondischargeable under other subsections of section 523(a). For example, debts procured by fraud may be nondischargeable under section 523(a)(6) as arising from conduct causing willful and malicious injury to an entity or property of an entity. Four other subsections of section 523(a) make different sorts of debts procured by fraud nondischargeable.[10]   Consequently, in considering claims of nondischargeability under section 523(a)(6) arising from conduct which may give rise to nondischargeability of a debt under other subsections of section 523(a), courts must be careful to preserve the elements of nondischargeability and limitations on nondischargeability found in other, more specific other subsections of section 523(a) to prevent section 523(a)(6) from rendering superfluous those other subsections.

4 *Collier on Bankruptcy* ¶ 523.12[1] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (footnote omitted).

As noted in *Collier on Bankruptcy*, the evidence that supports a claim under § 523(a)(6) may also support a claim under § 523(a)(2) and § 523(a)(4).  "[Since] the evidence that supports the unpleaded issue is also relevant to another issue in the case, the introduction of this evidence 'may not be used to show consent to trial of a new issue absent a clear indication that the party who introduced the evidence was attempting to raise a new issue.'"  *Shanbaum*, 10 F.3d at 313.  The Court finds that at trial ARS did not clearly indicate that it was attempting to raise a new ground for relief, namely § 523(a)(6).  Consequently, the Court finds that § 523(a)(6) was not tried by the parties' implied consent.

The Court will note that ARS alleges in FN 1 in its Post-Trial Brief that the appearance of the word *conversion* in paragraph five of its Complaint is sufficient to bring its claim under § 523(a)(6).  The Court disagrees.

---

[10]*See* 11 U.S.C. § 523(a)(2), (a)(4), (11), 19. *(sic)*.

In *Southern Constructors Group, Inc. v. Dynalectric Co.,* 2 F.3d 606 (5th Cir. 1993), the Fifth Circuit rejected a similar argument that claims were "implicitly included (and thus not waived) within the relevant pleadings." *Id.* at 609. The Fifth Circuit found that Southern had a "misapprehension of how notice pleading operates." *Id.* Likewise, this Court finds that the appearance of the word *conversion* in one paragraph of the Complaint is not sufficient to allege a claim under § 523(a)(6). Doing so would "grant carte blanche to a litigant to throw facts at the court, while placing responsibility on the court–not the litigant–to sort through those facts and come up with possible theories for recovery." *Id.* at 610. Since the Fifth Circuit rendered its decision in *Southern*, the U.S. Supreme Court issued *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009), which set forth a more restrictive federal pleading standard. The result reached in *Southern* is consistent with *Iqbal.*

Since neither subsection (b)(1) nor (b)(2) applies, the Court finds that Rule 15(b) does not permit ARS to amend its Complaint to add § 523(a)(6) as a new ground for relief.

### B. Fed. R. Civ. P. 7 and Fed. R. Bankr. P. 9013

Federal Rule of Civil Procedure 7 is made applicable to bankruptcy cases by Rule 7007 of the Federal Rules of Bankruptcy Procedure. Rule 7 states that "[a] request for a court order must be made by motion. The motion must: (A) be in writing unless made during a hearing or trial; (B) state with particularity the grounds for seeking the order; and (C) state the relief sought. "[11]

In addition, Federal Rule of Bankruptcy Procedure 9013 states:

**Rule 9013. Motions: Form and Service.**

A request for an order. . .shall be by written motion, unless made during a hearing.

---

[11]Fed. R. Civ. P. 7(b)(1).

11

> The motion shall state with particularity the grounds therefore, and shall set forth the relief or order sought. Every written motion other than one which may be considered ex parte shall be served by the moving party on the trustee or debtor in possession and on those entities specified by these rules or, if service is not required or the entities to be served are not specified by these rules, the moving party shall serve the entities the court directs.

Fed. R. Bankr. P. 9013.

ARS's request to amend its Complaint contained in its Post-Trial Brief does not satisfy the rules regarding matters of form. "[A] . . . [m]emorandum is not a pleading from which the Court grants relief." *In re Gilmore, Jr.,* 198 B.R. 686, 692 n. 4 (Bankr. E.D. Tex. 1996), *amended in part on reh'g*, 1996 WL 1056889 (Bankr. E.D. Tex. 1996), *aff'd*, *United States v. Gilmore,* 226 B.R. 567 (E.D. Tex. 1998). "[B]ecause a memorandum or brief does not constitute a pleading, a request for relief contained therein cannot constitute a written motion." *In re Allegheny Health, Educ. & Research Foundation,* 233 B.R. 671, 683 (Bankr. W.D. Pa. 1999); *see also Vidalia Dock & Storage Co., Inc. v. Donald Engine Service, Inc.,* 2008 WL 115199, *2 (W.D. La. Jan. 9, 2008) (motion in brief was "deemed deficient"); *Material Products Int'l, Ltd. v. Ortiz (In re Ortiz)*, 441 B.R. 73, 82 (Bankr. W.D. Tex. 2010) ("[T]he Plaintiff's request to amend should be stricken simply because it is improperly made in a responsive pleading. Fed. R. Bankr. P. 9013."). Since a brief "is not a pleading from which the Court grants relief,"[12] ARS's request to amend its Complaint contained in FN 1 of its Post-Trial Brief is deficient and is not properly before the Court. For these reasons, ARS is not granted leave to amend its Complaint to add § 523(a)(6) as a ground for relief.

### C. May a new theory of recovery be raised?

Assuming for the sake of discussion that ARS's request to amend its Complaint was not

---

[12]*In re Gilmore,* 198 B.R. at 692 n. 4.

12

deficient and was properly before the Court, ARS may not amend its Complaint to add a new theory of recovery. In *Tiger Trading, Inc. v. HDD Rotary Sales, LLC. (In re HDD Rotary Sales, LLC),* 2013 WL 443968 (Bankr. S.D. Tex. Feb. 4, 2013), the court preliminarily granted a motion for judgment against Tiger Trading on partial findings after Tiger Trading had rested its case-in-chief. However, the court permitted Tiger Trading the opportunity to file a brief showing that its case-in-chief did demonstrate the existence of an enforceable oral contract. Instead of simply briefing the issue, Tiger Trading raised a new theory of recovery in its brief. In its brief, Tiger Trading alleged that the new theory was properly pled, but if the court found otherwise, Tiger Trading requested permission to amend its pleadings to include the new theory of recovery. The court found that Tiger Trading's new theory of recovery was not properly pled nor was it tried by consent, therefore, the court found that the new theory of recovery would not be considered as Tiger Trading had waived it. "[Tiger Trading] may not, after resting its case-in-chief, amend its complaint to bring forth new theories of recovery after realizing the insufficiency of its original theories." *In re HDD Rotary Sales,* 2013 WL 443968 at *14. The court further held that allowing the amendment "would be unfairly prejudicial to the defendants by subjecting them to further litigation after completion of the arbitration proceedings." *Id.*

In the case at bar, ARS is also attempting to add a new theory of recovery, § 523(a)(6), after the completion of the trial. Like Tiger Trading, ARS has not properly pled § 523(a)(6), and since it was not tried by consent–either express or implied– ARS may not amend its Complaint at this late stage of litigation to add a new theory of recovery.

In *Southern Constructors*, the Fifth Circuit held Southern would not be given a "second chance" to bring a claim that was not presented to an arbitration panel. The Fifth Circuit found

13

> Southern, under another version of its argument, urges that a party may be entitled to recovery under any legal theory that would fit allegations of fact contained in the operative pleadings. Southern contends that this rule would apply even after extensive discovery and a pretrial order have been used to narrow the facts and relevant legal issues for trial, or, as in the present case, arbitration.
>
> Adoption of Southern's blind-hog-occasionally-finds-an-acorn approach would play havoc with trial procedure and would negate the narrowing and winnowing process that occurs under the present federal rules.

*Southern Constructors,* 2 F.3d at 610 (footnote omitted).

While the matter in the case at bar has not reached the judgment stage, the Fifth Circuit's reasoning in *Southern Constructors* is instructive to the case at bar. ARS is asking the Court to sift through the facts and to decide which is the best ground for relief for the debt to be declared nondischargeable. The burden is on ARS to prove that the debt is nondischargeable by pleading a specific subsection of § 523. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed. 2d 755 (1991). It is not the duty of the Court to select the specific code section for ARS to litigate.

Under § 523, "[t]here are 21 categories of debts that are excepted from discharge under section 523(a). The 21 categories are listed in paragraphs (1) through (19) of section 523(a)."[13] A review of the case law and of *Collier on Bankruptcy* demonstrates that each subsection of § 523 applies to different fact scenarios, and each has its own elements and case law which has developed around each subsection. Therefore, when filing a complaint under § 523, a creditor must specify which subsection it alleges applies to the facts of its case. *See In re Ortiz,* 441 B.R. at 75 ("[T]he Plaintiff does not distinguish in the Complaint whether the dischargeability of debt is sought under § 523(a)(2)(A) or (B). This lack of distinction and failure to plead with particularity is fatal to Plaintiff's Original Complaint."); *TNL Construction, Inc. v. Johnson (In re Johnson).* 2006 WL

---

[13]4 *Collier on Bankruptcy* ¶ 523.01 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

6507734 (Bankr. N.D. Tex. Feb. 8, 2006) (discussing §§ 523(a)(2), (a)(3) and (a)(6)); *Kessler v. Butler (In re Butler),* 186 B.R. 371 (Bankr. D. Vt. 1995) (discussing §§ 523(a)(15), (a)(5) and (a)(8)).

Consequently, even if the Court accepted FN 1 as a properly pled motion to amend, the Court finds that it would be unfairly prejudicial to the Debtor to allow the amendment after the close of discovery, after the conclusion of three pretrial conferences, and then finally, after the conclusion of the trial.

In its Complaint, ARS pled § 523(a)(2)(A) and § 523(a)(4), therefore, the Court must now determine if ARS has met its burden under these two code sections. The Court will not consider ARS's newly-alleged claim under § 523(a)(6). As stated previously, neither of ARS's post-trial briefs address § 523(a)(2)(A) or § 523(a)(4). Instead, ARS's post-trial briefs are focused solely on § 523(a)(6). For that reason, the Court finds that neither of ARS's post-trial briefs were helpful in assisting the Court to reach its decision.

### III.

### A.  Issue Preclusion/Collateral Estoppel[14] in Bankruptcy Courts

ARS alleges that the Mississippi Judgment in the amount of $74,297.73 it was awarded in state court is entitled to preclusive effect in establishing the grounds for nondischargeability under § 523(a)(2)(A) and § 523(a)(4). Before deciding whether the Mississippi Judgment falls within the

---

[14]Issue preclusion is also known by the term collateral estoppel. The *Restatement (Second) of Judgments* replaced the terms *res judicata* and *collateral estoppel* with the clearer terms of *issue preclusion* and *claim preclusion.* Since the adoption of the *Restatement (Second) of Judgments,* the United States Supreme Court has "consistently urged courts to use the terms *claim preclusion* and *issue preclusion,* rather than *res judicata* and *collateral estoppel* as they apply *Restatement (Second)* analysis." *Principles of Preclusion and Estoppel in Bankruptcy Cases,* 79 Am. Bankr. L.J. 839, 843 (Fall 2005) (footnotes omitted). In this Opinion, the Court will use the term issue preclusion rather than collateral estoppel.

exceptions to discharge, the Court will consider the preclusive effect, if any, of the Mississippi Judgment.

"*Issue preclusion* bars relitigation of issues that have been actually litigated. . . .The most frequent application of *issue preclusion* in bankruptcy cases arises in connection with contests over the dischargeability of a particular debt." *Principles of Preclusion and Estoppel in Bankruptcy Cases,* 79 Am. Bankr. L.J. 839, 852-53 (Fall 2005). "Although bankruptcy courts have exclusive jurisdiction to determine the dischargeability of debts under the Bankruptcy Code, it is well established that issue preclusion, also called collateral estoppel, may apply in bankruptcy dischargeability proceedings. *See generally Grogan v. Garner,* 498 U.S. 279, 284, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991); *Schwager v. Fallas (In re Schwager),* 121 F. 3d 177, 181 (5th Cir. 1997)." *Cornwell v. Loesch,* 2004 WL 614848, at *2 (N.D. Tex. Feb. 27, 2004). "[I]n only limited circumstances may bankruptcy courts defer to the doctrine of collateral estoppel and thereby ignore Congress' mandate to provide plenary review of dischargeability issues." *Dennis v. Dennis (In re Dennis),* 25 F. 3d 274, 278 (5th Cir. 1994), *cert. denied,* 513 U.S. 1081, 115 S. Ct. 732, 130 L. Ed. 2d. 636 (1995).

In *Grogan v. Garner,*[15] the United States Supreme Court held that the doctrine of issue preclusion may apply in § 523(a) litigation in the bankruptcy court in order to prevent the relitigation of "those elements of the claim that are identical to the elements required for discharge and which were actually litigated and determined in the prior action. *See* Restatement (Second) of Judgments § 27 (1982)." *Grogan*, 498 U.S. at 284 (footnote omitted). For the purpose of nondischargeability, issue preclusion applies in bankruptcy court only if "the first court has made specific, subordinate,

---

[15]498 U.S. 279, 112 L. Ed. 2d 755, 111 S. Ct. 654 (1991).

16

factual findings on the identical dischargeability issue in question—that is, an issue which encompasses the same *prima facie* elements as the bankruptcy issue—and the facts supporting the court's findings are discernible from that court's record." *In re Dennis,* 25 F.3d at 278.

When considering the preclusive effect of a state court judgment, a federal court must look to the law of the state where the judgment was entered and give whatever preclusive effect the judgment would have under that state's law. *Shimon v. Sewerage & Water Bd. of New Orleans,* 565 F.3d 195, 199 (5th Cir. 2009); *Chizk v. Ramon (In re Ramon),* 433 B.R. 571, 583 (Bankr. N.D. Tex. 2010) (preclusive effect of a judgment entered in Mississippi).

The Mississippi Supreme Court has stated that collateral estoppel/issue preclusion "precluded parties from relitigating issues authoritatively decided on their merits in prior litigation to which they were parties or in privity." *State ex rel. Moore v. Molpus,* 578 So. 2d 624, 640 (Miss. 1991).

At the trial, ARS introduced the record from the state court action. Exhibit 1 is a composite exhibit of the state court record. It contains ARS's state court complaint, the Debtor's response, ARS's motion for summary judgment, the Debtor's response to the summary judgment motion, and the Mississippi Judgment. In his opening statement at the trial on the adversary, the attorney for ARS stated that the motion for summary judgment was argued before the state court judge, however, Exhibit 1 does not include a transcript of that argument.

In its complaint filed in state court, ARS asks for a judgment against the Debtor in the amount of $74,297.73 because the Debtor was "unjustly enriched. . .at the expense of St. Dominic."[16] No where in the state court complaint does ARS allege that the Debtor committed embezzlement,

---

[16]Exhibit 1, *Complaint,* Cause No. 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COV, filed Nov. 3, 2010, ¶6, last unnumbered page.

larceny or fraud.

In its *Motion for Summary Judgment and Notice of Hearing*, ARS states that "because there is no genuine issue as to any material fact, ARS is entitled to a judgment as a matter of law."[17]  The *Final Summary Judgment* order (SJ Order) was signed by the county judge on July 25, 2011.  The pertinent parts of the SJ Order are cited below:

> This matter came before the Court on the motion of the Plaintiff for summary judgment against the Defendant(s) and the Court having considered the pleadings and Plaintiff's motion and supporting affidavits, finds that the motion is well taken and should be granted.
>
> IT IS, THEREFORE, ORDERED AND ADJUDGED that Advanced Recovery Systems, Inc. be and it is hereby awarded Final Summary Judgment against the Defendant(s) for $74,297.73.
>
> SO ORDERED AND ADJUDGED this the 25th day of July, 2011.

Exhibit 1, *Final Summary Judgment,* filed July 26, 2011, first unnumbered page.  All that was submitted to this Court is the language quoted above.  There was no evidence submitted to this Court to show that the state court judge made any specific findings of fact or conclusions of law in support of the SJ Order quoted above.

In a recent case from the Northern District of Texas, the bankruptcy court addressed the preclusive effect of a judgment entered in Mississippi in the context of dischargeability.  The court found that "[i]n Mississippi, a party will be barred by collateral estoppel from relitigating an issue only if the issue was 'actually litigated in the former action; determined by the former action; and, essential to the judgment in the former action.'" *In re Ramon*, 433 B.R. at 583 (quoting *American Casualty Co. v. United Southern Bank,* 950 F.2d 250, 253 (5th Cir.1992)).

---

[17]Exhibit 1, *Motion for Summary Judgment and Notice of Hearing,* filed March 7, 2011, first unnumbered page.

In the case at bar, the Court finds that the state court record contained in Exhibit 1 does not prove or even intimate that the state court considered any of the standards required for nondischargeability of a debt under § 523(a)(2)(A) or § 523(a)(4). There is no proof that the "elements of the [state court] claim. . .are identical to the elements required for discharge." *Grogan,* 498 U.S. at 284. The record does not show where fraud, larceny or embezzlement were "actually litigated...determined...and essential"[18] to the SJ Order. Since there is nothing in the state court record to show that the "issues [were] authoritatively decided on their merits,"[19] issue preclusion does not apply.

Having found that issue preclusion does not apply, the Court will now determine if ARS proved at the trial on the adversary the facts necessary to have the Mississippi Judgment declared nondischargeable under § 523(a)(2)(A) or § 523(a)(4).

### B. Is the Mississippi Judgment nondischargeable under §§ 523(a)(2)(A) or (a)(4)?

At the outset, the Court will note again that while the Debtor addresses both § 523(a)(2)(A) and § 523(a)(4) in his brief, ARS does not address § 523(a)(2)(A) or § 523(a)(4) in either its *Plaintiff's Post-Trial Brief*[20] or its *Plaintiff's Post-Trial Reply Brief*.[21] Instead, ARS only addresses § 523(a)(6) in its briefs.

Under § 523(a), ARS bears the burden of proving its factual allegations by a preponderance of the evidence. *Grogan*, 498 U.S. at 287-88. Preponderance of the evidence has been defined as:

---

[18]*Id.*

[19]*State ex rel. Moore,* 578 So. 2d at 640.

[20]Docket #31; filed on August 13, 2012.

[21]Docket #33; filed on August 31, 2012.

19

"Preponderance of the evidence" means the greater weight of evidence. It is the evidence which, when weighed with that opposed to it, has more convincing force and is more probably true and accurate. If, upon any issue in the case, the evidence appears to be equally balanced, or if it cannot be said upon which side it weighs heavier, then plaintiff has not met his or her burden of proof.

*Smith v. United States*, 726 F.2d 428, 430 (8th Cir. 1984) (citations omitted).

"[E]xceptions to discharge are broadly construed in favor of debtors to accommodate the Bankruptcy Code's policy of providing a fresh start to debtors, unhampered by preexisting financial burdens. *In re Rea,* 245 B.R. 77, 84–85 (Bankr. N.D. Tex.2000) (citing *In re Davis,* 194 F.3d 570, 574 (5th Cir.1999))." *In re Morris*, 2011 WL 2693966, at *5 (Bankr. N.D. Tex. July 11, 2011).

### 1.  § 523(a)(2)(A)

As noted above, § 523(a)(2)(A) excepts from discharge "any debt. . .for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;" 11 U.S.C. § 523(a)(2)(A).   The intent of § 523(a)(2)(A) is to protect victims of fraud.  *Bandi v. Becnel (In re Bandi),* 683 F.3d 671, 674 (5th Cir. 2012), *cert. denied,* — U.S. —, 133 S. Ct. 845 (2013).

In the case at bar, the Court finds that ARS has not proven by a preponderance of the evidence that the Debtor obtained the $74,297.73 as a result of false pretenses, a false representation, or actual fraud as required by § 523(a)(2)(A).  The only evidence produced at trial regarding any false representations was the testimony of an employee of St. Dominic.  She testified that in March of 2010, she spoke to the Debtor and/or his wife regarding the $74,297.73 check.  She further testified that the Debtor and/or his wife stated that they had not received from St. Dominic a check in December of 2009 for $74,297.73.

While the Court finds that the evidence proves that these statements made by the Debtor and his wife[22] were false representations, they were made in March of 2010 and subsequent to the Debtor receiving and cashing the check in December of 2009. "If the property or services were obtained before the making of any false representation, subsequent misrepresentations will have no effect on dischargeability." 4 *Collier on Bankruptcy* ¶ 523.08[1][d] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (footnote omitted), *see ITT Financial Services v. Hulbert, (In re Hulbert),* 150 B.R. 169, 173-75 (Bankr. S.D. Tex. 1993). Since no evidence was introduced to show the Debtor's false statements or representations caused St. Dominic to mail the check to the Debtor in December of 2009, ARS has not met its burden under § 523(a)(2)(A).

### 2.   § 523(a)(4)

As recited above, § 523(a)(4) excludes from a debtor's discharge a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). The Fifth Circuit has stated that § 523(a)(4) "was intended to reach those debts incurred through abuses of fiduciary positions and through active misconduct whereby a debtor has deprived others of their property by criminal acts; both classes of conduct involve debts arising from the debtor's acquisition or use of property that is not the debtor's." *In re Boyle,* 819 F.2d at 588.

There is no allegation by ARS that the Debtor was "acting in a fiduciary capacity" as required in § 523(a)(4). However, this discharge exception applies even when the larceny or embezzlement occurs outside of a fiduciary relationship. "In section 523(a)(4), the term 'while acting in a fiduciary

---

[22]From the audio recording of the trial, it appears that Mrs. Clemons, and not the Debtor, actually denied receiving the check from St. Dominic. However, the testimony of the employee from St. Dominic is not entirely clear as to which party made the statements. Regardless of who made the statements, it does not affect the Court's decision.

capacity' does not qualify the words 'embezzlement' or 'larceny.'  Therefore, any debt resulting from embezzlement or larceny falls within the exception of clause (4).   4 *Collier on Bankruptcy* ¶ 523.10[1][2] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.), *see also In re Miller,* 156 F.3d at 602.

"To meet the definition of 'embezzlement,' there must be proof of the debtor's fraudulent intent in taking the property." [23]  "A creditor proves embezzlement by showing that he entrusted his property to the debtor, the debtor appropriated the property for a use other than that for which it was entrusted, and the circumstances indicate fraud."  *Brady v. McAllister (In re Brady),* 101 F.3d 1165, 1173 (6th Cir. 1996).  No proof was submitted at the trial which showed that the Debtor had a "fraudulent intent in taking the property"[24] or that the Debtor "deprived [St. Dominic] of [its] property by criminal acts."[25]  Nor was there any proof produced to show that St. Dominic entrusted the $74,297.73 check to the Debtor.  Therefore, ARS has not shown by a preponderance of the evidence that the Debtor embezzled the $74,297.73 check.

The final possible ground for declaring the debt nondischargeable under § 523(a)(4) would be if ARS has proven by a preponderance of the evidence that the Debtor committed larceny in order to obtain the check.  Larceny is defined as the "fraudulent and wrongful taking and carrying away of the property of another with intent to convert the property to the taker's use without the consent of the owner.  As distinguished from embezzlement, the original taking of the property must be unlawful."  4 *Collier on Bankruptcy* ¶ 523.10[2] (Alan N. Resnick & Henry J. Sommer eds., 16th

---

[23]*In re Miller*, 156 F.3d at 602-03.

[24]*In re Miller,* 156 F.3d at 603.

[25]*In re Boyle,* 819 F.2d at 588.

ed.) (footnote omitted).

ARS did not produce any evidence to support a finding that the original taking of the $74,297.73 check was unlawful.  No evidence was introduced to show that the Debtor did anything to induce St. Dominic to send him the check nor did ARS produce any proof to show that when the Debtor cashed the $74,297.73 check, which is when the "taking" would have occurred, that the Debtor did so knowing that he was taking St. Dominic's money without their consent.  It was not until March of 2010, some three months after the Debtor had cashed the $74,297.73 check, that St. Dominic had contact with the Debtor regarding its error in sending the $74,297.73 check to him. Those facts clearly do not show that the Debtor committed larceny as defined by § 523(a)(4).

## CONCLUSION

Neither subsection (b)(1) nor (b)(2) of Rule 15 applies to permit ARS to amend its Complaint to switch from § 523(a)(2)(A) and/or § 523(a)(4) to § 523(a)(6) as its grounds for having the debt in the amount of $74,297.73 declared nondischargeable.

Additionally, ARS's request in FN 1 to amend its Complaint is not well taken in that it does not satisfy the rules of form "because a memorandum or brief does not constitute a pleading, a request for relief contained therein cannot constitute a written motion." *In re Allegheny Health,* 233 B.R. at 683.

As to the grounds pled in the Complaint, § 523(a)(2)(A) and § 523(a)(4), the Court finds that ARS has not proven by a preponderance of the evidence that the Debtor obtained the $74,297.73 as a result of false pretenses, a false representation, or actual fraud as required by § 523(a)(2)(A).

In addition, the Court finds that ARS has not met its burden under § 523(a)(4).  "In short, section 523(a)(4) excepts from discharge debts resulting from the fraudulent appropriation of

another's property, whether the appropriation was unlawful at the outset, and therefore a larceny, or whether the appropriation took place unlawfully after the property was entrusted to the debtor's care, and therefore was an embezzlement." 4 *Collier on Bankruptcy* ¶ 523.10[2] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). ARS has not proven by a preponderance of the evidence that the Debtor committed embezzlement or larceny as contemplated under § 523(a)(4).

Consequently, the Court finds that ARS has not proven by a preponderance of the evidence that the $74,297.73 debt should be declared nondischargeable pursuant to § 523(a)(2)(A) or § 523(a)(4).

In reaching this conclusion, the Court does not condone the actions of the Debtor. Rather, under the facts of this case, the Court finds that ARS has not met its burden of proof.

A separate judgment consistent with this opinion will be entered in accordance with Rules 9014 and 9021 of the Federal Rules of Bankruptcy Procedure.

Edward Ellington
United States Bankruptcy Judge
Dated: March 6, 2013